# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>BARKANDBREW, INC. d/b/a LA JOLLA BREW HOUSE; CLAUDETTE MANNIX; and CYNTHIA KAUANUI,<br><br>　　　　　　　　　　Defendant. | CASE NO. 09 CV 2295 JLS (POR)<br><br>**ORDER: (1) DENYING DEFENDANTS' MOTION TO DISMISS; (2) STAYING THE ACTION PENDING RESOLUTION IN STATE COURT; and (3) DISMISSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE.** |

Presently before the Court is Barkandbrew, Inc., Claudette Mannix, and Cynthia Kauanui's (collectively, "Defendants") motion to dismiss or, in the alternative, stay the above-captioned action. (Doc. No. 27.) Also before the Court is Evanston Insurance Company's ("Plaintiff") opposition and Defendants' reply. (Doc. Nos. 31, 33.) For the reasons stated below, the Court **HEREBY DENIES** Defendants' motion to dismiss; (2) **GRANTS** Defendants' motion to stay the proceedings; and (3) **DISMISSES** Plaintiff's motion for summary judgment without prejudice.

## BACKGROUND

The present action is an insurance coverage dispute between Evanston Insurance Company ("Plaintiff") and its insureds, BarkandBrew, Inc. and Claudette Mannix, the owners and operators of the La Jolla Brew House. The coverage dispute arises out of the underlying action currently

pending in San Diego County Superior Court and set for jury trial to begin on July 23, 2010: *Cynthia Kauanui v. Seth Logotaeao Cravens, et al.*, Case No. 37-2009-00086511-CV-PO-CTL. (hereinafter the "Underlying Action").

## I.   The Underlying Action

The Underlying Action was filed in state court on July 22, 2008 by Ms. Kauanui and alleges survival and wrongful death actions arising from the death of her son, Emery Kauanui Jr. (*See* Evanston RJN, Ex. A (original complaint).)  The operative complaint in the Underlying Action, the Third Amended Complaint, alleges that, on May 24, 2007, five defendants in that action were served alcohol at the Brew House. (*See id.*, Ex. E (Third Amended Complaint) at ¶¶ 8, 15.)  While at the Brew House, the five defendants became belligerent and were asked to leave the bar. (*Id.* ¶ 16.)  The five defendants did so, as did Ms. Kauanui's son Emery. (*Id.* ¶¶ 16, 17.)  Emery "withdrew from defendants . . . and went straight home." (*Id.* ¶ 17.)  The five defendants, however, followed Emery home "and in their drunken stupor, ended up gravely injuring him.  The injuries suffered by Emery . . . in the altercation resulted in his untimely death four days later." (*Id.*

The Third Amended Complaint in the Underlying Action alleged six causes of action against the various defendants: (1) negligence against all defendants; (2) providing alcohol to obviously intoxicated minor against Mannix and BarkandBrew; (3) willful misconduct against all defendants; (4) battery against the five defendants; (5) wrongful death against all defendants; and (6) survival as to causes of action one through four against all defendants. (*See generally id.*)

## II.   The Present Action

The present action arises out of Plaintiff's alleged duty to defend and indemnify BarkandBrew and Mannix in the Underlying Action.  Plaintiff issued a commercial general liability policy, No. ARTV001158-01 to Defendants BarkandBrew and Mannix, effective March 10, 2007 to March 10, 2008. (*See* Tomasevic Decl. ISO MTD, Ex. B (hereinafter "Policy").)  The Policy affords General Liability coverage and Liquor Liability coverage with a limit of $1,000,000. (*Id.*)

An Assault and/or Battery Coverage endorsement (the "A/B Endorsement") to the Policy,

however, modifies the insurance coverage under the Policy. The A/B Endorsement provides that Plaintiff will only pay $100,000, including damages and defense costs, per occurrence/common cause with a $300,000 aggregate "for claims made against [Defendants] caused by:

    (1) Assault and Battery committed by any person;
    (2) The failure to suppress or prevent assault and battery by any person;
    (3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which would contribute to assault and battery;
    (4) The negligent hiring supervision, or training of any person; or
    (5) The use of any force to protect persons or property . . .

(*Id.* at 56.)

Plaintiff filed the present declaratory relief action on October 15, 2009, seeking a declaratory judgment concerning the application of the A/B Endorsement.[1] (Doc. No. 1.) Specifically, Plaintiff seeks a judicial determination that the A/B Endorsement applies to the Underlying Action and that the Policy limit for both the defense and indemnity of the Underlying Action is $100,000. (*Id.*)

On November 30, 2009, Defendant Kauanui filed an answer and counterclaim for declaratory relief against Plaintiff. (Doc. No. 6.) On December 16, 2009, Defendants BarkandBrew and Mannix filed an answer and counterclaim for declaratory relief against Plaintiff as well. (Doc. No. 10.) The counterclaims contend that the A/B Endorsement does not apply to the Underlying Action and that the applicable policy limit is $1,000,000, not including defense costs. (*See* Doc. Nos. 6, 10.)

Plaintiff filed its answer to Defendant Kauanui's counterclaim on December 18, 2009 and its answer to Defendant BarkandBrew and Mannix's counterclaim on December 31, 2009. (Doc. Nos. 11, 14.)

On March 5, 2010, Plaintiff filed a motion for summary judgment, which is currently set for hearing on July 8, 2010. (Doc. No. 24.) On March 11, 2010, Defendant Kauanui filed the present motion to dismiss or, in the alternative, to stay the action. (Doc. No. 27.) Defendants

---

[1] The action was also originally filed against Emery's father who, at the time, had an underlying wrongful death action pending as well. However, Mr. Kauanui subsequently dismissed his underlying claims and was dismissed from the action on March 4, 2010. Accordingly, the declaratory judgment action not only concerns the underlying action filed by Ms. Kauranui. (*See* Doc. No. 22; *see also* Firtch Decl. ISO Opp. ¶¶ 15-18.)

1  BarkandBrew and Mannix filed a notice of joinder to Defendant Kauanui's motion to dismiss on
2  April 1, 2010.  (Doc. No. 30.)  Plaintiff filed its opposition to the motion to dismiss on April 9,
3  2010 (Doc. No. 31) and Defendants filed a reply on April 16, 2010.  (Doc. Nos. 33; *see also* Doc.
4  No. 34 (notice of joinder).)  A hearing on the motion to dismiss originally set for April 23, 2010
5  was thereafter vacated and taken under submission without oral argument.

## LEGAL STANDARD

This action was brought before this Court under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  District courts have the discretion to decline jurisdiction over suits brought under the Declaratory Judgment Act when federal law is not at issue.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942), *reh'g denied*, 317 U.S. 704 (1942); *see also Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366 (9th Cir. 1991).  In considering whether to retain jurisdiction, the court must "balance the concerns of judicial administration, comity, and fairness to the litigants."  *Chamberlain*, 931 F.2d at 1367. "Federal courts should be reluctant to decide factual issues which are currently at issue in state court."  *State Farm Fire and Cas. Co. v. McIntosh*, 837 F. Supp. 315, 316 (N.D. Cal. 1993).  This is to prevent the federal court from collaterally estopping the parties from litigating the issue further in state court, disrupting the underlying state court action, and adversely impacting the promotion of comity between federal and state courts.  *Id.*  If the court declines to exercise jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

In the alternative, the court may retain jurisdiction but stay the action pending the resolution of the state court action under the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Leyva v. Certified Grocers of CA, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.")

## DISCUSSION

Defendants' motion requests the Court to decline jurisdiction over the action or, in the

1  alternative, stay the action pending resolution of the state court proceeding.  Defendants contend
2  that jurisdiction over the matter under the Declaratory Judgment Act should be declined because
3  (1) the Court would be required to decide factual issues that have been pending in state court for
4  the past 20 months; (2) the Court would have to decide issues of California state law; and (3) the
5  declaratory relief action is not ripe for adjudication and there is no need to needlessly expend
6  resources before determining BarkandBrew and Mannix's liability in the Underlying Action.

7  First, Defendants argue that there are several facts at issue in the Underlying Action which
8  will allegedly determine the outcome of the present case; namely, who or what "caused" Emery's
9  death and the number of qualifying "occurrences/common causes."  These two issues, according to
10 Defendants, will determine whether the A/B Endorsement applies and, if so, whether the coverage
11 is limited to $100,000, $200,000 or the aggregate $300,000 depending on the number of
12 occurrences/common causes.

13 Defendants argue that who and/or what caused Emery's death, and if Mannix and
14 BarkandBrew proximately caused his death, is at issue in the present case because causation is also
15 an issue under the Policy and A/B Endorsement.  Defendants misconstrue the causation element in
16 the A/B Endorsement.  The Underlying Action will determine, for example, the knowledge and
17 state of mind of BarkandBrew, whether similar incidents have transpired at the Brew House,
18 whether BarkandBrew knew or had reason to know the five defendants were dangerous, and the
19 time that elapsed between the serving of alcohol and Emery's beating.  However, these factual
20 determinations which will ultimately determine proximate causation in the Underlying Action are
21 irrelevant to the determination of what caused *the claims* to be filed in the Underlying Action and
22 whether those *claims* were caused by an assault or battery committed by any person.  As stated
23 above, the A/B Endorsement limits coverage for "any claims made against [the insured] caused by
24 . . . Assault and Battery committed by any person . . ." or other specific situations related to assault
25 and battery.  (*See* Policy at 56.)  Thus, the applicability of the A/B Endorsement limitation to the
26 indemnity and defense of the Underlying Action is a legal determination involving the language of
27 the contract which does not require the factual determination of proximate causation involved in
28

the Underlying Action.[2]

This same analysis applies to the determination of how many "occurrences/common causes" occurred as defined within the Policy. What constitutes an "cccurrence/common cause" under the language of the Policy is a legal determination made by this Court, not a factual determination made by the jury in the Underlying Action. Any such determinations regarding the applicability of the A/B Endorsement and the Court's interpretation of the contract language is not binding on the state court in the Underlying Action and therefore will have no collateral estoppel effect which was a concern in the cases cited by Defendants. *See, e.g.*, *State Farm Fire*, 837 F. Supp. at 316. Accordingly, the Court will not decline jurisdiction over the coverage dispute based on Defendants' argument that the Court will be required to make factual determinations already at issue in the Underlying Action.

Second, Defendants assert that issuing a declaratory judgment in this action would require the Court to make "needless decisions of state law." *State Farm Fire*, 837 F. Supp. at 317 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Zurich*, 669 F. Supp. at 309. Specifically, Defendants argue that a declaratory judgment would require the Court to decide what constitutes a "claim" under California law, as well as what "caused" the claims to be filed against the insureds. While these may be state law determinations, they are not "needless" determinations and, as explained above, they are not determinations which will be decided in state court. The issue in this case is whether the claims asserted in the Underlying Action constitute "claims" "caused by" the assault or battery committed by any person. This is not a "needless decision[] of state law" and the Court will not decline jurisdiction on this basis.

Third, Defendants argue that declaratory relief is not ripe for adjudication and that no justification for the action has been stated in the Complaint. Defendants assert that fifteen months elapsed between Ms. Kauanui filing the complaint in state court and Plaintiff filing the instant

---

[2] Defendants argue that claims "caused by" assault and battery defer from claims "arising out of" assault and battery, thus making causation an issue in this case where it would not otherwise be in policies using the "arising out of" language. The Court, in deciding the present motion, does not resolve that issue nor whether the A/B Endorsement does in fact apply in this case. Those determinations are properly made in regards to the pending motion for summary judgment. The only determination at this stage is whether the Court should decline jurisdiction over the matter or stay the action.

1 action, and this action was filed only three months prior to the then-scheduled jury trial in the
2 Underlying Action. The declaratory judgment complaint alleged that, at that time, only $48,000
3 remained of the $100,000 limitation Plaintiff asserted was applicable in this case. (Do. No. 1.)
4 However, Defendants argue that there is no justification for why trial could not proceed with the
5 remaining $52,000 regardless of whether the A/B Endorsement limitation applies or not, and
6 therefore adjudication of the issue is not ripe. Defendants argue that Plaintiff's goal in filing the
7 action with $52,000 remaining must be to either coerce a low settlement or to prejudice Ms.
8 Kauanui by having them spend money and resources defending this action instead of the
9 Underlying Action.[3]

10 To be sure, courts have questioned the validity of bringing a federal action under the
11 Declaratory Judgment Act when the state court proceeding is still pending because "the federal
12 action tends to exert a profound influence on the state court proceeding itself by changing the
13 balance in settlement bargaining. The advantages gained by the insurer as a result of this influence
14 appear to be incalculable." *State Farm Fire*, 837 F. Supp. at 316; *see also Zurich*, 669 F. Supp. at
15 310-11. Moreover, "a state court plaintiff interested in settling his claim may be forced to await
16 the determination of the federal suit." *Zurich*, 669 F. Supp. at 310. But, on the other hand,
17 resolution of a coverage dispute could resolve legal questions which could ultimately facilitate
18 settlement. *See Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1064 (6th Cir. 1987), *abrogated on*
19 *other grounds by*, *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000); *see also ACandS,*
20 *Inc. v. Aetna Casualty and Surety Co.*, 666 F.2d 819, 823 (3d Cir. 1981). In this case, a decision
21 on the coverage action could very well break the apparent stalemate in settlement discussions
22 because the parties and the insurer, who has been and is involved in the defense of the Underlying
23 Action, will know the sum available for settlement.

---

[3] Defendants further argue that it is unnecessary to determine the coverage dispute without first determining whether the Underlying Action as against Defendants Mannix and BarkandBrew is valid, citing *Zurich*, 669 F. Supp. at 310. As explained above, the validity of the tort claims asserted against Defendants in the Underlying Action, and thus the Defendants' liability in that action, is irrelevant for purposes of this coverage dispute. Whether or not Mannix and/or BarkandBrew are found liable in the Underlying Action has no bearing as to whether the A/B Endorsement limits Plaintiff's duty to defend and potentially indemnify Defendants. Furthermore, the issue of ripeness as it relates to how much is left of the $100,000 limitation is now moot, as it appears that the limit has since been reached. (*See* Wright Decl. ISO Opp., ¶¶ 8-9.)

A review of the time line in this action and the Underlying Action, however, impacts the Court's decision as to whether the present action may unduly hinder settlement, give an unfair advantage to the insurer, or otherwise undermine the efficiency of the dispute resolution process. Oral argument on the pending motion for summary judgment which will determine the applicability of the A/B Endorsement to the Underlying Action is currently set for July 8, 2010 before this Court. The jury trial in the Underlying Action is currently scheduled to begin on July 23, 2010 as of the date of this Order. Accordingly, Plaintiff hopes that in the two weeks between oral argument in this case and the beginning of the trial in state court, an Order issuing a declaratory judgment will be issued by this Court which may facilitate settlement of the Underlying Action. However, there is no telling as to when such an Order will be issued—it could be days or weeks before the jury trial is set to begin, in the middle of the jury trial, or at the resolution of the jury trial. Accordingly, whereas a declaratory judgment may potentially facilitate settlement, the uncertainty of when such a judgment will be issued creates an undue pressure on the state court action. *See Zurich*, 669 F. Supp. at 310-11. Accordingly, the Court finds that the close time frame between the scheduled oral argument and the commencement of the jury trial creates an uncertainty as to when the Court will issue its declaratory judgment may unduly hinder settlement or provide an unfair advantage to the insurer in the Underlying Action. This makes the concerns regarding settlement and comity expressed in *State Farm* and *Zurich* applicable to this action.[4]

That said, as stated above, the Underlying Action will not determine factual issue or state law issues which otherwise weigh in favor of the Court declining to exercise jurisdiction over the coverage dispute. Moreover, the resolution of the state law claims will not, as Defendants contend, render the present action moot even if Defendants Mannix and BarkandBrew are rendered not liable for Emery's death. This Court or the state court would still need to

---

[4] Plaintiff contends that *Essex Ins. Co. v. Yi*, 795 F. Supp. 319 (N.D. Cal. 1992) is the applicable authority in this matter. The district court in *Essex* exercised jurisdiction over the federal declaratory action and determined that an assault and battery limitation in that case applied to the underlying action. *Id.* However, *Essex* did not discuss the retention of jurisdiction, which is the issue in this matter. The mere fact that *Essex* chose to retain jurisdiction, without explanation as to why, is not helpful to the Court. *See State Farm Fire*, 837 F. Supp. at 318.

independently interpret the language of the Policy and A/B Endorsement to determine the extent of, if any, Plaintiff's duty to defend its insureds in that action. Therefore, the Court finds that the appropriate action is to retain jurisdiction over the declaratory action, but stay the action pending resolution of the state action.

## CONCLUSION

For those reasons, the Court **HEREBY DENIES** Defendants' motion to dismiss the action. Further, the Court **HEREBY STAYS** the present action pending resolution of the state court proceeding. Accordingly, the pending motion for summary judgment is **HEREBY DISMISSED WITHOUT PREJUDICE.**

Upon completion of the jury trial phase of the Underlying Action, Plaintiff **SHALL FILE** a Notice with this Court within <u>10 days of the date the verdict is rendered</u> or within <u>10 days after settlement</u> in the Underlying Action is reached. Further, Plaintiff **MAY RE-FILE**, if it chooses, its motion for summary judgment in this action <u>within 30 days</u> of the jury rendering its verdict in the Underlying Action.

IT IS SO ORDERED.

DATED: June 22, 2010

                          *Janis L. Sammartino*
                          Honorable Janis L. Sammartino
                          United States District Judge